Neal H. Levin (*Pro Hac Vice pending*)
nhlevin@freeborn.com
Shira R. Isenberg (*Pro Hac Vice pending*)
sisenberg@freeborn.com
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606-6677
Telephone:  (312) 360-6000
Facsimile:   (312) 360-6573

TAMERLIN J. GODLEY (State Bar No. 194507)
tamerlin.godley@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue
Fiftieth Floor
Los Angeles, California 90071-3426
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Plaintiff
TURNER Entertainment Networks, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| TURNER ENTERTAINMENT NETWORKS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>MORGAN SPURLOCK and WARRIOR POETS INC.,<br><br>Defendants. | Case No. 2:18-cv-2490<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF WRITTEN CONTRACT; AND**<br><br>**(2) PERMANENT INJUNCTION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Trial Date:    Unassigned |

1. This Court has original subject matter jurisdiction over all claims by Plaintiff Turner Entertainment Networks, Inc. ("TEN") under 28 U.S.C. § 1332. TEN alleges, on personal knowledge as to itself and on information and belief as to others, as follows:

## NATURE OF ACTION

2. This action arises out of the actions of Defendants Morgan Spurlock ("Spurlock"), and Warrior Poets Inc. ("Warrior Poets").

3. TEN entered into a production services agreement (the "PSA") with Warrior Poets to produce "Who Rules the World?" – a series focused on issues facing women (the "Project"). Under the PSA, Spurlock's executive producing services were deemed "of essence" to the project. The PSA also provided that TEN would fund the Project at certain specified levels and all funds received by Warrior Poets from TEN would be placed in a special bank account (the "Production Bank Account") to be used solely for the Project. A copy of the PSA is attached hereto as Exhibit A.[1]

4. In December 2017, Spurlock issued a public statement in which he confessed to sexual misconduct, sexual harassment, and substance abuse and stepped down from his position at Warrior Poets. The Project was halted. Critical partners involved in the Project severed their relationship with Spurlock and Warrior Poets. TEN informed Warrior Poets that it was in material default of the PSA and demanded return of the funds in the Production Bank Account. TEN's repeated efforts to obtain the funds from Defendants have been met with radio silence.

5. TEN brings this suit to assure that the funds in the Production Bank Account are not spent for other purposes and to compel return of the funds as required by the PSA.

## PARTIES

6. At all relevant times, Plaintiff TEN was and now is a corporation duly organized and existing under the laws of the State of Georgia, having its principal place of business at One CNN Center, Atlanta, Georgia 30303. TEN also has a

---

[1] An application to file Exhibit A under seal will be filed.

location at 3500 West Olive Avenue, 9th Floor, Burbank, California 91505. TEN and its affiliated entities provide media and entertainment services.

7. Defendant Warrior Poets Inc. is a production services company and a New York corporation with its principal place of business at 407 Broome Street #7, New York, New York 10013.

8. Defendant Morgan Spurlock is a co-founder of Warrior Poets and is a resident of the State of New York, residing at 173 Greene Avenue, Brooklyn, New York 11238 and 340 Upper Millbrook Road, Middletown, New York 10940. Until his resignation, Spurlock was the Chief Executive Officer of Warrior Poets.

## JURISDICTION, VENUE, AND STANDING

9. This Court has original subject matter jurisdiction over TEN's Complaint pursuant to 28 U.S.C. § 1332 because (a) the amount in controversy between TEN and Defendants exceeds the sum of $75,000, exclusive of interest and costs, and (b) there is diversity of citizenship between TEN (a citizen of Georgia for purposes of the diversity jurisdiction statute) and Defendants (all citizens of New York for purposes of the diversity jurisdiction statute).

10. This Court has personal jurisdiction over Defendants. The PSA expressly provides that "the parties hereto submit to the exclusive jurisdiction of the Federal or State Courts in Los Angeles County, California." PSA, Standard Terms, ¶ 23.

11. Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because Defendants have expressly consented to jurisdiction in this Judicial District. *Id*.

## FACTUAL ALLEGATIONS

### A. General Background

12. Spurlock is an American documentary filmmaker, humorist, television producer, screenwriter and playwright. Some of his works include *Super Size Me* (2004), *Where in the World is Osama bin Laden?* (2008) and *One Direction: This Is Us* (2013).

13. In 2004, Spurlock co-founded the production company Warrior Poets Inc. Spurlock was the President of Warrior Poets until December 2017.

### B. The Production Services Agreement

14. On March 7, 2017, TEN entered into a PSA with Warrior Poets and Spurlock. The PSA is confidential and will be filed under seal.

15. Pursuant to the PSA, Warrior Poets agreed to be the producer and specifically furnish the executive producer services of Spurlock for a television series titled "Who Rules The World?" Spurlock's services were "of the essence" to the PSA. PSA, ¶ 7(b).

16. The Project aimed to "unpack the most divisive and complicated issues facing women today, from the policing of their bodies and judgments to their family planning choices, to the micro-aggressions they face in the media, the workplace and everyday life." May 17, 2017 TEN Press Release attached as Exhibit B.

17. Paragraph 7 of the PSA's Standard Terms and Conditions provides that "[Warrior Poets] shall open a dedicated 'Production Bank Account' solely for the [Project], to which it shall credit all sums payable under this [PSA]. [Warrior Poets] shall withdraw only those amounts required for the production of the [Project] in accordance with the approved Budget and cash flow schedule for the [Project] . . . . [Warrior Poets] . . . shall not use the Production Bank Account or the monies deposited therein for any purpose other than relating to the production of the [Project] (i.e., there shall be no commingling of funds related to the [Project] with funds related to any other project of [Warrior Poets] or otherwise)." PSA, Standard Terms, ¶ 7.

18. Upon information and belief, the Production Bank Account is in Warrior Poets' name and is located at Signature Bank, 261 Madison Avenue, New York, New York, 10016 (Account No. 1502240168, Routing No. 026013576).

19. Paragraph 13 of the Standard Terms and Conditions provides that "[Warrior Poets] acknowledges that the Services to be provided by [Warrior Poets]

hereunder are of a unique nature, that TEN may not be adequately compensated at law for any breach by [Warrior Poets] and that TEN shall be entitled to seek, among other remedies, injunctive relief to prevent or redress a breach by [Warrior Poets] hereunder." *Id.*, ¶ 13.

### C. Defendants' Incurable Default and Material Breach

20. On December 13, 2017, Spurlock released a confession on Twitter, admitting to sexual misconduct, sexual harassment, infidelities and alcoholism. A copy of Spurlock's Twitter post is attached hereto as Exhibit C.

21. As a consequence of Spurlock's confession, on December 14, 2017, Warrior Poets released a statement that Spurlock would "be stepping down immediately."

22. As a further consequence of Spurlock's actions, critical partners involved with the Project severed their relationship with Spurlock and Warrior Poets.

23. By a letter dated December 15, 2017 from TEN to Warrior Poets, TEN stated that "all services of both Warrior Poets and Spurlock on the Project pursuant to [the PSA] will be suspended until further review and notice. During this period of suspension, no services will be rendered nor compensation provided (other than for services already rendered)[.]" TEN received no response to this letter. A true and correct copy of the December 15, 2017 letter is attached hereto as Exhibit D.

24. By letter dated December 21, 2017 from TEN's counsel to Warrior Poets, TEN stated that "[a]s a result of Mr. Spurlock's conduct, Warrior Poets and Mr. Spurlock are no longer able to perform as required under the Agreement and are in default." TEN's counsel also stated, pursuant to the PSA, that TEN is entitled to take over production of the Project and asked for (1) copies of all agreements entered into relating to the Project; (2) the current balance of the Production Bank Account and the detailed activity from inception of the Production Bank Account, with a copy of the most recent bank statement; (3) accounting and financial

information showing the costs, commitments and liabilities associated with production of the Project, including any draft or final budgets, a current cost report, a current trial balance and a cash flow forecast showing actuals to date and a monthly projection for all remaining services; and (4) information sufficient to show the Warrior Poets' current financial capacity.  All of this information was required to be provided no later than December 29, 2017.

25.  Neither TEN nor its counsel received a response to this letter.  Counsel for TEN attempted to contact Warrior Poets' counsel by phone and was told that it was unclear whether the law firm would continue to represent Warrior Poets.  None of the requested documents or information have been provided.  A true and correct copy of the December 21, 2017 letter is attached hereto as Exhibit E.

26.  TEN's counsel sent another letter to Warrior Poets on February 5, 2018, indicating that pursuant to TEN's termination or takeover rights under the PSA, "[TEN] is entitled to return of all of the funds it has advanced for production.  Under the Agreement, these funds are to be maintained in a dedicated Production Bank Account to be used 'solely for the [Project].'  In no event can Warrior Poets use these funds for any other purpose.  Please send immediate written confirmation by return email that Warrior Poets has not and will not use the funds in the Production Bank Account for non-Series expenses.  By February 9, 2018, wire all of the funds in the Production Bank Account to [TEN's bank]."  TEN also requested copies of the necessary bank documents sufficient to confirm that TEN has received all remaining funds in the Production Bank Account and that the funds have not been used for any improper purpose.  A true and correct copy of the February 5, 2018 letter is attached hereto as Exhibit F.

27.  Neither TEN nor its counsel received a response to this letter and no funds in the Production Bank Account have been returned to TEN.

28.  Unable to obtain return of the funds through cooperative processes, TEN was forced to bring this suit.

## COUNT I
## Breach of Contract

### (Against All Defendants)

29. Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully alleged herein.

30. TEN has performed each of the obligations, promises and covenants required of it under the PSA, except to the extent that such performance has been prevented or excused by the acts or omissions of Defendants.

31. Defendants have breached the PSA by, among other things:

   (1) Spurlock's admitted sexual misconduct;

   (2) Warrior Poets' inability to perform as required under the PSA because a show focusing on women's issues and empowerment cannot be produced by an executive producer who has admitted to numerous acts of sexual misconduct;

   (3) Warrior Poets' inability to provide Spurlock's services, which were "of essence" to the PSA;

   (4) Warrior Poets' failure to return all funds deposited in the Production Bank Account upon demand;

   (5) Warrior Poets' failure to provide: (1) copies of all agreements entered into relating to the Project; (2) the current balance of the Production Bank Account and the detailed activity from inception of the Production Bank Account, with a copy of the most recent bank statement; (3) accounting and financial information showing the costs, commitments and liabilities associated with production of the Project, including any draft or final budgets, a current cost report, a current trial balance and a cash flow forecast showing actuals to date and a monthly projection for all remaining services; and (4) information sufficient to show the Warrior Poets' current financial capacity; and

(6) Warrior Poets' failure to provide copies of the necessary bank documents sufficient to confirm that TEN has received all remaining funds in the Production Bank Account and that the funds have not been used for any improper purpose.

32. As a direct and foreseeable result of Defendants' contractual breaches as herein alleged, TEN has been damaged in an amount to be determined at trial, plus interest thereon.

## COUNT II
### Permanent Injunction (Rule 65 of the Federal Rules of Civil Procedure)

**(Against All Defendants)**

33. Plaintiff incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully alleged herein.

34. TEN seeks a preliminary and permanent injunction to enjoin Defendants from disposing of or commingling any funds in the Production Bank Account and to require Defendants to return all funds in the Production Bank Account to TEN.

35. The funds in the Production Bank Account belong to TEN now that the PSA has been breached and the Project will no longer be produced by Warrior Poets.

36. Pursuant to the breach of the PSA and Warrior Poets' failure to return the funds in the Production Bank Account, TEN has suffered an irreparable injury.

37. Specifically, TEN cannot wait until damages are determined at trial due to the real possibility that Warrior Poets may collapse and/or have no funds to pay a judgment to TEN. Under information and belief, due to Spurlock's Twitter confession and the resulting fall-out from the admissions, Warrior Poets is having serious internal problems and may not have the funds to compensate TEN for the breach of contract.

38. Among other things, Spurlock was the principal talent and founder of Warrior Poets. His sudden departure, as well as the departure of many more senior employees of Warrior Poets, makes it unrealistic that TEN's claims can be adequately addressed by a money judgment if TEN is required to wait until the conclusion of trial.

39. Without a preliminary and permanent injunction, it is likely that the Production Bank Account will be depleted or commingled before it obtains a judgment in this action, especially since Warrior Poets has failed to respond to any of the numerous demands from TEN that Warrior Poets provide an accounting and turn over the funds following Spurlock's removal. If the funds are depleted or commingled, Defendants may not be able to pay a judgment compensating TEN for their breach of the PSA after trial.

40. Available legal remedies are therefore inadequate to compensate TEN for the injury it has suffered.

41. As set forth in Section 13 of the Standard Terms and Conditions of the PSA, Warrior Poets agreed that "the Services provided by [Warrior Poets] hereunder are of a unique nature, that [TEN] may not be adequately compensated at law for any breach by [Warrior Poets] and that [TEN] shall be entitled to seek, among other remedies, injunctive relief to prevent or redress a breach by [Warrior Poets] hereunder." PSA, Standard Terms, ¶ 13.

42. Considering the balance of the hardships between Warrior Poets and TEN, a remedy in equity is warranted because Warrior Poets is not entitled to any of the funds in the Production Bank Account, which are to be used solely for the Project. The funds belong solely to TEN and must be returned.

43. The public interest would be served by a permanent injunction here because the public has an interest in enforcement of contracts and barring the unauthorized use of another entity's funds.

## PRAYER FOR RELIEF

**WHEREFORE**, TEN respectfully requests this Court enter judgment in favor of TEN and against Defendants as follows:

1. On the First Claim of Relief, judgment against Defendants for damages, in an amount to be determined at trial;

2. On the Second Claim of Relief, a preliminary and permanent injunction, preventing Defendants from using the Production Bank Account or commingling the funds with any other funds, immediately returning all funds in the Production Bank Account to TEN, and providing an accounting of the use of the funds;

3. Awarding TEN pre-judgment interest at the maximum rate provided by law;

4. Awarding TEN its costs of suit herein, including attorney's fees and expenses; and

5. Granting TEN such other, further, and different relief as the Court deems just, proper, and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues triable by jury.

DATED: March 27, 2018        FREEBORN & PETERS LLP

By: ___/s/ Neal H. Levin___
    NEAL H. LEVIN

MUNGER, TOLLES & OLSON LLP

By: ___/s/ Tamerlin J. Godley___
    TAMERLIN J. GODLEY

Attorneys for Plaintiff Turner Entertainment Networks, Inc.

-11-
COMPLAINT